O'HANLON SCHWARTZ, P.C.

www.ohanlonschwartz.com
Phone: (267) 546-9066
Fax: (215) 563-6617

steve@ohanlonschwartz.com
izzy@ohanlonschwartz.com
noah@ohanlonschwartz.com
benny@ohanlonschwartz.com

2 Penn Center, Suite 1410
1500 John F. Kennedy Blvd.
Philadelphia, PA 19102

511 Market Street
Camden, NJ 08102
1 Holtec Drive, Suite G102
Marlton, NJ 08053

Noah A. Schwartz
Direct Dial: 609.233.1590

September 16, 2025

**VIA ECF**
The Honorable Mitchell S. Goldberg, U.S.D.J.
United States District Court, Eastern District of Pennsylvania

> **In re:  The Children's Hospital of Philadelphia v. Orphion Therapeutics, Inc.**
> **Docket No.: 2:25-cv-3095-MSG**

Dear Judge Goldberg:

This letter is Orphion[1]'s response to CHOP's letter requesting a pre-motion conference. [2]

Orphion opposes CHOP's proposed motion because CHOP ignores that: (i) CHOP was obligated to store the Vector Materials under the Purchase Agreement; (ii) Orphion made all the required payments before CHOP declared its breach; (iii) CHOP's reading of Zev Sunleaf's claim that the Vector Material was no longer available is forced and belied by follow-up communications; (iv) the "gist of the action" doctrine does not apply to misrepresentations intended to deceive a party into "fail[ing] to assert its contractual rights," *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 725 (E.D. Pa. 2014); and (v) Section 6.4 of the Purchase Agreement only limits liability for problems with the Vector Material—it does not cover "willful or wanton" torts like fraud and would not be enforceable if it did. *Lamb v. CVS Pharmacy LLC*, 704 F. Supp. 3d 606, 616 (E.D. Pa. 2023), *aff'd,* No. 24-1709, 2025 WL 1672340 (3d Cir. June 13, 2025).

Background: CHOP initially brought claims against Orphion under both the License Agreement and Purchase Agreement and in doing so violated the Order of Justice Borrok in Orphion's previously filed New York Action. ECF 1. As a result, CHOP was forced to amend its Complaint in which it seeks a declaratory judgment that it is not liable for breach and satisfied its obligations under the Purchase Agreement (Counts I-II) and had not committed fraud (Count III). ECF 13. Orphion answered and filed compulsory state-law counterclaims corresponding to CHOP's causes of action. Answer, Counts I, III-IV. CHOP has already conceded that these counts are the subject of "an actual controversy" between CHOP and Orphion. Am. Compl. ¶¶53, 57, 62.

Breach of the Purchase Agreement (Count I): CHOP argues that Orphion "does not specify any particular provision" of the Purchase Agreement that CHOP breached and that Orphion failed to make its full payment. CHOP ignores the plain language of the Purchase Agreement which states that "CHOP *shall store* the Material" until Orphion requested delivery. Answer ¶¶37, 39, 79, Ex. 2 §3.1. CHOP also argues that Orphion failed to plead that it paid for the Vector Materials

---

[1]     Defined terms used in CHOP's pre-motion letter are used identically here.

[2]     To the extent the Court's text order implies that Orphion should have submitted this response letter prior to the Court's September 11, 2025 Order (Doc. No. 20), Orphion apologizes. Orphion read the Court's standing 12(b) procedural order as giving Orphion "five (5) business days" to respond, which would have made Orphion's responsive letter due on Friday, September 12, 2025.

which ignores Orphion's allegation that it "paid more than it was required to pay under the Purchase Agreement" at the time CHOP declared its intent to breach. Answer ¶¶31-34. Orphion fully paid everything it was obligated to pay and any remaining payments were only required after the Vector Materials passed certain testing milestones. *Id.*¶¶31-34; Answer EX2, §4.1-4.2, Schedule 3. The Vector Materials had not yet passed those testing milestones—which CHOP does not dispute—so Orphion was not obligated to make those payments. Answer ¶32.

Despite their clear contractual obligation to store the Vector Materials until Orphion requested delivery, CHOP breached the Purchase Agreement by telling Orphion it no longer had all the vials of the Vector Materials which Orphion had purchased. At the very least, this was "[a] statement by a party [CHOP] that [it] will not or cannot perform in accordance with [the] agreement," and, therefore, creates "[a]n anticipatory breach of contract." *Jonnet Dev. Corp. v. Dietrich Indus., Inc.*, 316 Pa. Super. 533, 543, 463 A.2d 1026, 1031 (1983).

Fraud and Negligent Misrepresentation (Counts III & IV): Knowing that CHOP still had all the vials of the Vector Materials in June of 2023, CHOP now attempts to rewrite what Sunleaf told Orphion to minimize its fraud. This fails for two reasons. *First*, CHOP misrepresents Sunleaf as saying that it only had 125 vials of the Material "available to Orphion." CHOP Letter p. 2. But Sunleaf wrote "we only have 125 vials … available"—without the "to Orphion"—and immediately followed with "[w]e no longer have the 400 vials from 3 years ago."[3] The clear implication was the vials were gone. *Second*, CHOP's litigation-driven revision of what Sunleaf said ignores that Orphion responded to Sunleaf repeatedly asking for an explanation of what happened assuming the vials were literally not available and CHOP refused to provide an explanation. Answer ¶¶64-66, 69-70. Had it been true that Sunleaf did not mean that the Vector Materials were "destroyed or sold" he would have corrected Orphion's repeated understanding that they were truly unavailable. Discovery will resolve this question.

Nor are Orphion's fraudulent and negligent misrepresentation claims barred by the "gist of the action" doctrine. "[T]he gist of the action doctrine does *not* apply when the defendant not only breached the contract, but also made misrepresentations about the breach with the intent to deceive the plaintiff, such that the unsuspecting plaintiff continued the contractual relationship or failed to assert its contractual rights against the defendant." *Synthes*, 25 F. Supp. 3d at 725 (emphasis in the original and collecting cases); *accord Servis One, Inc. v. OKS Grp., LLC*, 528 F. Supp. 3d 359, 369 (E.D. Pa. 2021) (finding fraud claim was not barred where "Defendants made misrepresentations … in order to conceal their breach" of the contract); *Patel v. Patel*, 2016 WL 3000821, at *6 (E.D. Pa. May 25, 2016) (J. Goldberg) (quoting *Synthes*). That is exactly what Orphion has alleged here. Answer ¶98.

Not only are Orphion's counterclaims for fraud and negligent misrepresentation exactly the types of claims that Pennsylvania courts hold are not barred by the gist of the action doctrine, this Court has recognized that "because the doctrine calls for such a fact-intensive inquiry, several courts within the Third Circuit have cautioned against deciding the applicability of the doctrine at the motion to dismiss stage." *Patel*, 2016 WL 3000821, at *5. At the very least, "dismissal of Plaintiff's fraudulent misrepresentation … claims based on the 'gist of the action' doctrine would

---

[3]    Rather than violate the court's standing order as CHOP did, Orphion does not attach the full email as an exhibit.

be premature." *Id*. at *6; accord *Telwell Inc. v. Grandbridge Real Est. Cap., LLC*, 2016 PA Super 159, 143 A.3d 421, 429–30 (2016) (finding "that trial court's dismissal of the tort claims based on a finding that the gist of the action was in contract was both premature and erroneous" for fraudulent and negligent misrepresentation claims).

CHOP is also unable to hide from the consequences of its fraud. *First*, Section 6.4 of the Purchase Agreement does not bar the recovery of consequential damages—here the destruction of Orphion's entire business, valued over $27 million—from CHOP's fraud. CHOP omitted key words of the clause in its Letter. The limitation of liability provision sets forth "CUSTOMER'S EXCLUSIVE REMEDY UNDER THIS AGREEMENT"—it does not apply to tort claims. This is evident from the very case that CHOP cites to support its position, *Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*, which only applied a limitation in liability to a tort claim because the clause at issue specifically applied to damages "whether arising in contract **or tort**." 460 F.Supp.3d 560, 575 (E.D.Pa. 2020). Here, the clause says nothing about damages arising in tort and is instead limited to remedies "under this agreement." Answer Ex. 2 §6.4. *Second*, Section 6.4, in context, is clearly limited to damages arising out of the quality, or lack thereof, of the Vector Material. Indeed, the clause starts with Orphion acknowledging "that the Material is experimental," no returns are allowed, the Vector Material is being provided "AS IS," CHOP "DISCLAIMS ANY WARRANTY," and then "IN NO EVENT WILL ANY PARTY TO THIS AGREEMENT BE LIABLE FOR ANY CONSEQUENTIAL … DAMAGES … SUSTAINED FROM THE USE OF, OR INABILITY TO USE, ANY MATERIAL." *Id*. The damages here were sustained from CHOP lying about the Vector Material and not delivering it, not from Orphion's use or inability to use the Vector Material.

*Third*, even if Section 6.4 did expressly apply to tort claims unrelated to the quality of the Vector Material, it would be unenforceable as to CHOP's fraud "because Pennsylvania law prohibits enforcement of exculpatory and liability limiting clauses for … willful, or wanton behavior." *Lamb*, 704 F. Supp. 3d at 616, *aff'd,* No. 24-1709, 2025 WL 1672340 (3d Cir. June 13, 2025); *Valley Forge Convention & Visitors Bureau v. Visitor's Servs., Inc.*, 28 F. Supp. 2d 947, 950 (E.D. Pa. 1998) ("While a limitation of liability clause may relieve the beneficiary of liability for the effects of his negligent conduct, it will not preclude recovery for damages caused by willful or wanton conduct."). Here, Orphion alleges that CHOP lied to Orphion about the Vector Materials to keep Orphion paying and to prevent Orphion from bringing an action for specific performance. Answer ¶98. Under Pennsylvania law, a "limitation of liability of liability clause does not prevent inclusion" of damages for "a claim for fraudulent misrepresentation." *Harvard Eye Assocs. v. Clinitec Int'l, Inc.*, 1998 WL 248916, at *1 (E.D. Pa. May 5, 1998).

Respectfully submitted,

**O'HANLON SCHWARTZ, P.C.**

_____

NOAH A. SCHWARTZ

3